In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00233-CV
_____

IN THE INTEREST OF M.H., M.H., AND N.H.

On Appeal from the 317th District Court
Jefferson County, Texas
Trial Cause No. C-235,211

MEMORANDUM OPINION

Mother and Father filed appeals following the trial to the bench of a suit affecting their parental relationships with their children, *Missy*, *Matt*, and *Nicole*.[1] Mother argues the evidence is legally and factually insufficient to support the findings she endangered her children, constructively abandoned them, violated the requirements of her court-ordered Family Service Plan, and to prove she used

_____

[1]To protect the identities of Mother, Father, and their children, we use pseudonyms in the opinion in place of names. *See* Tex. R. App. P. 9.8(a), (b).

1

controlled substances in a manner dangerous to the health or safety of her children.[2]

Mother also argues the evidence does not support the trial court's best-interest finding, an additional finding the trial court relied on when it terminated her parental rights.[3] On the other hand, Father's attorney filed a brief in which he concluded that "no non-frivolous grounds for appeal" exist to warrant overturning the trial court's judgment.[4]

First, we conclude the record contains clear and convincing evidence sufficient to show that Mother knowingly allowed the children to remain in conditions that endangered them. Second, we conclude the record contains clear and convincing evidence sufficient to prove that Mother engaged in conduct dangerous to the physical or emotional well-being of her children.[5] Third, we conclude the record contains clear and convincing evidence to support the trial court's best-interest finding. Fourth, as to Father's appeal, we agree with Father's court-

---

[2]*See* Tex. Fam. Code Ann. § 161.001(b)(1) (D), (E), (N), (O), (P) (Supp.). For convenience, we will refer to these in some parts of the opinion as subsections D, E, N, O, or P.

[3]*Id*. § 161.001(b)(2) (Supp.).

[4]*See Anders v. California*, 386 U.S. 738 (1967); *see also In re L.D.T.*, 161 S.W.3d 728, 731 (Tex. App.—Beaumont 2005, no pet.) (holding that *Anders* procedures apply in parental-rights termination cases).

[5]Tex. Fam. Code Ann. § 161.00(b)(1) (D), (E).

appointed attorney's conclusion that Father's appeal is frivolous. For the reasons explained below, we affirm.

Background

In June 2019, a police officer stopped Mother for a traffic violation in Orange, Texas. When the police searched Mother's car, they reported they found drug paraphernalia inside, two pipes the arresting officer knew to be the kind used by individuals to use methamphetamine.

During the stop, Mother told the police officer her children were being supervised by their eleven-year-old aunt in a motel. Shortly after that, the Department received a report about the information Mother gave the police. Officers with the Beaumont Police Department along with employees of the Department went to the motel and checked on Missy, Matt, and Nicole. When they arrived, they found them asleep and being supervised by an adult male. The man told the officers he and Mother were friends.

While at the motel, caseworkers from the Department interviewed the children. They discovered Missy had a severe sunburn on her back, face, and one of her arms. Missy also had a ringworm infection on her chest, back, and arm. Matt had a severe sunburn on his face, back, and arms, together with insect bites that covered his legs. Nicole had a severe sunburn to her face, back and arms.

3

In June 2019, the trial court signed an emergency temporary order, authorizing the Department to take the children into the Department's temporary custody. At the time of the removal, Father was in jail and awaiting trial on a motion to revoke a community supervision order associated with his plea of guilty on a charge of robbery. In the emergency order, the trial court named the Department the temporary sole managing conservator of the children. Following the removal, the Department sent the children to health care providers for exams. Those providers determined all three children had second-degree sunburns and were suffering from ringworm. A dentist who saw the children also reported that all three children had severely decayed teeth and reported the decay was causing pain. Shae Living, the Department's investigator, explained when she testified in the trial that all three children went through "several dental surgeries" to treat the dental problems the dentist told the Department the children were having with their teeth.

The Department's petition to remove the children from Mother's and Father's care includes claims to terminate Mother's and Father's parental rights. On June 20, the trial court conducted a full adversary hearing on the Department's lawsuit. During the hearing, the trial court instructed the Department to develop family service plans for the parents and to outline the actions Mother and Father needed to take to address the concerns the Department raised in the hearing.

On July 23 and September 24, 2020, the parties tried the case to the bench. Mother and Father were represented by attorneys in the trial. The trial lasted two days. Four witnesses testified in the trial, Shae Living, Rebecca Tobin (the special advocate the court appointed for the children), Mother, and Father. Three weeks after the last day of the trial, the trial court signed a judgment terminating Mother's and Father's parental rights to Missy, Matt, and Nicole.[6] In the judgment, the trial court found Mother and Father knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being and had engaged in conduct that endangered their physical or emotional well-being. Additionally, as to Mother, the trial court found Mother constructively abandoned the children after the court removed them from Mother's home, violated a court-ordered family service plan, used controlled substances in a manner that endangered the health and safety of Missy, Matt, and Nicole, and failed to complete a drug abuse treatment program, which violated the orders the trial court had signed in the case.[7] The trial court also found terminating Mother's and Father's parental rights is in the best interest of Missy, Matt, and Nicole. The judgment names the Department as Missy's, Matt's, and Nicole's permanent managing conservator.[8]

---

[6]*See id.* § 161.001(b)(1)(D), (E), (N), (O), (P).
[7]*See id.*
[8]*See id.* § 161.001(b)(2).

5

Analysis

I.      Father's Appeal

Father filed an *Anders* brief in his appeal. The brief concludes that Father's appeal is frivolous.[9] The brief complies with the requirements of *Anders*.[10] It includes a professional evaluation of the record and explains why Father's attorney found no arguable grounds existed to support an argument asserting the judgment terminating Father's rights should be overturned. The attorney represented he sent Father a copy of the *Anders* brief, notified Father of his right to file a *pro se* response, and explained how Father could obtain the record if he wanted to file a response to support his appeal. The record shows that Father filed no response.

Based on the record and Father's *Anders* brief, we conclude no arguable grounds exist to support a merits-based argument in Father's appeal. We further find that Father's appeal is frivolous.[11] Accordingly, the trial court's judgment terminating Father's parental right to Missy, Matt, and Nicole is affirmed.

---

[9]*See Anders*, 386 U.S. at 744; *In re L.D.T.*, 161 S.W.3d at 731.

[10]*See In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied).

[11]*See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *see also In re K.R.C.*, 346 S.W.3d 618, 619 (Tex. App.—El Paso 2009, no pet.); *In re D.D.*, 279 S.W.3d at 850.

II.    Mother's Appeal

Mother raises six appellate issues in the brief she filed to support her appeal. In issues one through five, Mother argues the evidence is legally and factually insufficient to support the findings the trial court relied on to terminate her parental rights under sections 161.001(b)(1)(D), (E), (N), (O) and (P) of the Family Code.[12] In issue six, Mother argues the evidence is legally and factually insufficient to support the trial court's best-interest finding.

Since the grounds the trial court relied on to terminate Mother's parental rights include findings based on subsections D and E, we address Mother's arguments challenging the sufficiency of the evidence on those findings first.[13]

A. Standard of Review

In suits by the Department seeking to terminate the relationship between a parent and the parent's child, the Department must prove its allegation claiming that a ground to terminate the relationship exists by clear and convincing evidence.[14] *Clear and convincing evidence* means proof sufficient to "produce in the mind of

---

[12]*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O), (P).
[13]*See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (holding that reviewing courts must review issues that complain about findings under subsections (D) and (E) to avoid violating the parent's constitutional rights).
[14]*In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[15] In addition to proving a statutory ground exists to justify the termination of the parent-child relationship, the Department also proved that terminating the relationship is in the child's best interest.[16] When, as here, the trial court's order terminates the parent-child relationship under sections 161.001(b)(1)(D) or (E) as well as other grounds for termination, we must consider the parent's arguments in the appeal challenging the D and E grounds regardless of whether the evidence supports the other grounds the trial court relied on in its judgment to justify terminating the relationship.[17]

Mother argues the evidence presented during the trial to terminate her parent-child relationship under subsections D and E is legally insufficient to support the judgment. When reviewing claims that argued the evidence is legally insufficient to support a verdict, the evidence is reviewed in the light favoring the finding the factfinder made in the trial against whether "a reasonable trier of fact could have formed a firm belief or conviction that [the finding challenged in the appeal] was true."[18] In our review, we assume the factfinder resolved the facts in a manner

---

[15]Tex. Fam. Code Ann. § 101.007.
[16]*See* Tex. Fam. Code Ann. § 161.001 (Supp.); *see also In re J.L.*, 163 S.W.3d at 84.
[17]*In re N.G.*, 577 S.W.3d at 236-39.
[18]*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

8

consistent with its verdict.[19] If, however, the evidence is such that no reasonable factfinder could have formed a firm belief or conviction that the finding the appellant is challenging in the appeal is true, the evidence is not legally sufficient to support the finding.[20] In that case, we must then decide whether the judgment can stand based on the other grounds the trial court relied on in the judgment that it signed terminating the parent's relationship with her children.

Mother also argues the evidence is factually insufficient to support the trial court's subsections D and E findings. When conducting a factual sufficiency review, the appellate court reviews the evidence in the light that favors the factfinder's verdict. On appeal, the reviewing court must decide whether the evidence is such that the factfinder could have formed a firm belief or conviction that the finding the appellant challenged in the appeal is true.[21]

In this case, at least in part, the judgment relies on findings favoring the Department under subsections D and E.[22] Under subsection D, the Department needed to prove by clear and convincing evidence that Mother "knowingly placed or knowingly allowed [her children] to remain in conditions or surroundings which

---

[19]*Id.*
[20]*Id.*
[21]*Id.*
[22]Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E).

endanger[d] their physical or emotional well-being[.]"[23] Under subsection E, the Department needed to prove by clear and convincing evidence that Mother "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endanger[ed their] physical or emotional well-being[.]"[24] Subsection D requires the conduct to be engaged in knowingly, while subsection E allows the relationship to be terminated if the factfinder determines the parent engaged in the conduct that endangered the physical or emotional well-being of the children.[25]

To prove endangerment, the Department did not need to show that Mother caused an actual physical injury to her children. That's because the term *endangerment* means "to expose to loss or injury; to jeopardize."[26] Thus, regardless of whether a parent's conduct occurred before or after the child was born, the factfinder may consider the conduct to decide whether the parent engaged in conducted that endangered the child's physical or emotional well-being.[27] The

---

[23]*Id*. § 161.001(b)(1)(D).

[24]*Id*. § 161.001(b)(1)(E).

[25]*Compare id*. § 161.001(b)(1)(D), (E).

[26]*Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

[27]*See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."); *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.) ("Drug use and its effect on a parent's life and [the parent's ability to parent] may establish an endangering course of conduct."); *In re S.N.*, 272 S.W.3d 45, 52 (Tex.

10

Department's evidence about Mother's alleged endangering conduct hinged on Mother's history of using meth. Even if some of Mother's use of illegal substances occurred before some of her children were born, the trial court, as the factfinder, may consider the evidence about that conduct in deciding whether Mother was a fit parent. It is evidence that is relevant to whether the trial court could have formed a firm belief or conviction "that similar conduct will recur[.]"[28]

To support a judgment terminating the parent-child relationship, a finding under subsections D or E must be coupled with a finding that terminating the parent's relationship with the child "is in the best interest of the child."[29] When a parent appeals and challenges the factfinder's best-interest finding, we review the finding based on several factors, which may include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of

---

App.–Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being.").

[28]*In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

[29]Tex. Fam. Code Ann. § 161.001(b)(2).

the individuals seeking custody; (5) any programs available to assist these individuals to promote the best interest of the child; (6) the evidence showing the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that show the existing parent-child relationship is improper; and (9) any excuse the evidence reveals to explain any acts or omissions of the parent.[30] Even should the evidence conflict regarding these factors, the factfinder may weigh the evidence and conclude that terminating the parent's relationship with the child is in the child's best interest.[31]

In considering what is in child's best interest, the factfinder may rely on both direct and circumstantial evidence, the subjective facts, and the totality of the evidence admitted in the trial.[32] Generally speaking, in the appeal of a parent's legal and factual sufficiency arguments, evidence showing that a parent engaged in conduct that endangered the child is relevant to both the findings the factfinder made under subsections D and E as well as its best-interest finding.[33]

---

[30]*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b).

[31]*See In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

[32]*See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

[33]*See* Tex. Fam. Code Ann. § 263.307(b) (history of harm or abuse to a child is a factor in determining best interest); *Holley*, 544 S.W.2d at 371-72 (current and future danger to the children is a factor in determining best interest).

B.  Sufficiency of the Evidence — Subsections D and E

In issues one and two of her brief, Mother challenges the sufficiency of the evidence supporting the subsection D and E findings. Because Mother's arguments challenging the trial court's subsection D and E findings largely overlap, we consider issues one and two together in resolving these issues in her appeal. At trial, the Department presented substantial evidence that allowed the trial court to infer that Mother has a long-term history with abusing an illegal substance, methamphetamine. Mother did not deny that she used meth in the trial. Instead, she tried to minimize her use, swearing she only used meth "on and off" after she had children. A police report, prepared by the City of Orange Police Department after an officer in that City stopped Mother for violating a traffic law, shows the officer arrested Mother after finding drug paraphernalia in her car. The police report, which is in evidence, describes the paraphernalia found in the car as "meth pipes." According to the report, Mother admitted the pipes belonged to her. The report also states the arresting officer noticed "burnt residue" when he inspected the pipes.

Shae Living, a caseworker employed by the Department, testified for the Department on both days of the trial. According to Living, when the Department interviewed Mother, she told them she had used methamphetamine and alcohol in the past 30 days. The Department sent Mother for several drug tests after removing

13

Missy, Matt, and Nicole from Mother's home. Records from the provider where Mother was tested for drugs in November 2019 show that Mother tested positive for meth. That same month, Mother told a licensed counselor at the Spindletop Center she "has been using methamphetamine infrequently for the last couple months, about three times per month." Mother told the Department that while she had the children in her care, she had gotten so high she could not care for them or go to work. Mother told the Department during its investigation that her use of drugs had caused problems with her family, problems with her friends, and had interfered with her work.

When Mother testified, she admitted that in February 2020, she relapsed on the efforts she had made to remain sober and stay off meth. According to Mother, the relapse occurred when she snorted what she thought was cocaine after becoming intoxicated at a bar. But as the factfinder, the trial court had no obligation to accept Mother's explanation as an excuse or to believe her claim that she did not know she was snorting meth. The record before the trial court includes a drug test that is tied to Mother's testimony about her relapse. It is positive for meth. Mother also testified she had used cocaine eight months after the Department removed the children from her care. On cross-examination, Mother admitted her desire to use drugs was so strong she would "use anything [she could] get [her] hands on[.]"

14

The evidence in the trial shows that Mother failed to appear for several random drug tests and that her failure to appear for them violated the trial court's order requiring her to comply with a family service plan, which required her to appear when requested to submit to drug tests. While Mother offered excuses for missing these tests, the trial court, as the factfinder, was not required to believe Mother's testimony about why she missed these tests. Because Mother's problems with using meth were apparent from the time the trial court ordered the children removed from Mother's home, the trial court's pre-trial orders also required that Mother complete a drug treatment program. The record contains clear and convincing evidence that Mother did not do so, so the trial court, as the factfinder in the trial, had little reason to believe Mother's testimony claiming she has the skills she needs to stay off meth.

A report from Rebecca Tobin, the Court Appointed Special Advocate (CASA), dated September 22, 2020, was admitted into evidence without objection during the trial. The report reflects that Mother told Tobin she was planning to enter a drug treatment program on September 14, 2020. The report also reflects however, that as of September 22, Mother had not done so.

From the evidence before it about Mother's use of drugs and the effects it has had on Mother's ability to parent, we conclude the trial court could form a firm

15

conviction that Mother has a history of abusing meth and her conduct would recur should the children be returned to her care. Mother did not discontinue her use of meth after the trial court removed the children from her home, nor did Mother obtain treatment to deal with her desire to use meth. Based on the evidence relevant to Mother's use of drugs and failure to undergo a drug-abuse treatment program, the trial court could form a firm belief or conviction that Mother engaged in deliberate and conscious course of conduct that endangered the physical and emotion well-being of her children.

One of the ways Mother's parenting skills were affected by her drug use involved the conditions the Department found the children in when the trial court removed them from Mother's care. All three children were suffering from health issues. As the factfinder, the trial court could rely on that evidence to infer that the health problems the children were suffering were tied to Mother's neglect. Mother failed to appear for several of her regularly scheduled visits after the children came into the Department's care, and this is additional evidence the trial court could reasonably rely on to conclude Mother continued to engage in conduct after the Department removed the children that are relevant to the trial court's conclusion that she is not a fit parent.

Deferring to the trial court's role to decide what evidence is credible and to weigh the evidence, we conclude the Department presented legally and factually sufficient evidence that allowed the trial court to form a firm belief or conviction and find Mother knowingly endangered Missy, Matt, and Nicole. We further conclude the record contains legally and factually sufficient evidence to allow the trial court to form a firm belief or conviction that Mother endangered the physical and emotional well-being of Missy, Matt, and Nicole.[34] The evidence demonstrating how Mother cared for her children allowed the trial court to infer that Mother has repeatedly placed her desire to use meth above providing her children with a safe, stable and drug-free home.[35] While Mother testified she believed she could avoid meth and other illegal substances and take care of her children, the trial court was not required to believe her given the evidence showing she did not discontinue using meth after the trial court removed the children from her home and failed to ever complete a program designed to give her the skills she needs to abstain from using illegal drugs.[36]

---

[34]*See In re J.O.A.*, 283 S.W.3d at 345.

[35]*See Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

[36]*See Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 195-96 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (terminating parental rights even though the record contained no direct evidence to show the parent's continued drug use caused an actual physical injury to occur to the child).

We hold the evidence is legally and factually sufficient to support the trial court's subsection D and E findings.[37] Because issue one and two lack merit, they are overruled.[38]

In issues three, four, and five, Mother challenges the trial court's findings that rely on terminating her parental rights under subsections N, O, and P of the Family Code.[39] But because we have overruled Mother's first two issues, which challenge the trial court's D and E findings, we need not address issues three through five.[40] Yet to resolve Mother's appeal, we must address Mother's sixth issue challenging the sufficiency of the evidence supporting the trial court's best-interest finding.

C. Sufficiency of the Evidence —the Best-Interest Finding

In Mother's last issue, issue six, Mother argues the evidence is legally and factually insufficient to support the trial court's best-interest finding. When the case went to trial, Missy, Matt, and Nicole were seven, six and four years old. Upon being removed from Mother's care, the children exhibited various signs and symptoms

---

[37]Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.T.G.*, 121 S.W.3d at 125; *Edwards v. Tex. Dep't of Protective & Regulatory Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no pet.).

[38]*See In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014) (stating "clear and convincing proof of any one ground will support a judgment terminating parental rights, if similar proof also exists that termination is in the child's best interest").

[39]Tex. Fam. Code Ann. § 161.001(b)(1)(N), (O), (P).

[40]*See* Tex. R. App. P. 47.1 (requiring the appellate court's opinion to address only those issues necessary to resolving the appeal).

attributable to their health. As the factfinder, the trial court could have inferred these problems were tied to Mother's neglect of their health. When Mother testified in the trial, the only option she suggested she could provide for her children to live is the home in which she was living with an unrelated adult male.

The trial court could have inferred Mother's proposed placement was unsuitable for several reasons. First, Mother has not completed a drug abuse program in violation of the trial court's orders requiring her to do so. Second, according to Living, Mother lives in the home with an adult male and is unemployed. The Department investigated the living arrangement to determine whether it might be a suitable place for children to live. According to Living, the Department determined the home is not suitable because the adult male living there told the Department that he would not give up marijuana should Mother bring the children to his home. The evidence before the trial court shows that Father is currently incarcerated, and nothing shows that Father is willing or capable of assisting Mother with the expenses of raising and housing children. The evidence also shows Mother and Father are not married.

Both Living and Tobin, the CASA, testified they thought the children's best interest would be served by terminating Mother's parental rights and appointing the Department to be their permanent managing custodian. Tobin testified she tried to

find relatives where the Department could place the children, but she found none who stated they were willing to take the children into their homes. According to Living, she asked Mother whether the children had any relatives who might take them into their homes. Mother refused to provide Living with any names. Living also described that the children were currently living with foster parents in a foster home. In that placement, according to Living, the foster parents have taken the children to summer camp, the children are now reading, and the children have improved significantly while they have been in the Department's care. Living testified: "As of right now[,] they are thriving."

Deferring to the trial court's role as the factfinder in the trial, we conclude the evidence allowed the trial court to form a firm belief or conviction that terminating Mother's rights to Missy, Matt, and Nicole is in their best interest.[41] For the reasons explained above, Mother's last issue is overruled.

## Conclusion

We need not address issues three through five. Even if Mother could show in her appeal the findings that are relevant to those issues are insufficient to support them, matters we expressly do not reach, overturning these findings would not alter

---

[41]*See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *see also In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72.

the outcome in Mother's appeal.[42] After Father's court-appointed attorney filed his brief, he filed a motion to withdraw. We deny the attorney's motion. In parental-rights termination cases, the duties of court-appointed counsel to the client continue until the parent has either exhausted or waived the right to appeal from this Court's ruling.[43] Should Father tell his attorney he wants to appeal, Father's court-appointed attorney may satisfy his obligations to Father "by filing a petition for review that satisfies the standards for an *Anders* brief."[44]

In conclusion, we find Father's appeal is frivolous. We also conclude the issues dispositive of Mother's appeal—issues one, two, and six—lack merit. For these reasons, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on February 22, 2021
Opinion Delivered April 1, 2021

Before Golemon, C.J., Kreger and Horton, JJ.

---

[42]Tex. R. App. P. 47.1.

[43]*See* Tex. Fam. Code Ann. § 107.016(3)(B) (Supp.); *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016).

[44]*In re P.M.*, 520 S.W.3d at 27-28.